**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **ALPHA TELECOMMUNICATIONS, INC., et al.,** ) ) ) | **Case No. 1:06 CV 2975** |
| ) | **Judge Dan Aaron Polster** |
| **Plaintiffs,** ) ) | |
| ) | **MEMORANDUM OF OPINION** |
| vs. ) ) | |
| ) | **and** |
| **PROGRESSIVE COMMUNICATIONS, INC., et al.,** ) ) ) | **ORDER OF REMAND** |
| **Defendants.** ) | |

On May 8, 2006, Plaintiff Alpha Telecommunications, Inc. ("Alpha") filed a lawsuit against Defendant Progressive Communications, Inc., ("Progressive"), seeking to collect $511, 427.66 allegedly due for consulting work performed by Alpha for Progressive under the "Year 7" contract. *See Case No. 1:06 CV 1137* ("**First Case**")*, ECF No. 1*. The Court issued a show cause order challenging Alpha's standing to bring that action on behalf of a company that had been dissolved more than one year earlier (March 9, 2005), and requiring Alpha to establish why the Court should not dismiss the case. *Id., ECF No. 6*. The Court noted that a review of the Ohio Secretary of State's website revealed the following facts:

> (1) in 2004, Nathaniel Hawthorne, Esq., an officer of Alpha who represents Alpha in this case, sought an order dissolving Alpha in a case entitled *Paul Karas v. Nathaniel Hawthorne, et al.*, Cuyahoga County Court of Common Pleas Case No. CV-04-536259 (Stuart Friedman, J.), *see Attach. A*;
>
> (2) on October 14, 2004, Judge Friedman entered an Agreed Order Appointing a Receiver to take charge of the assets and affairs of Alpha, *Attach. B*;
>
> (3) on November 24, 2004, the parties in Case No. CV-04-536259 entered into a settlement agreement providing for the dissolution of Alpha, *see Attach. A* ("**Settlement Agreement**");
>
> (4) on March 9, 2005, Judge Friedman issued a Judgment Entry dissolving Alpha pursuant to O.R.C. 1701.91(A)(4) and ordering Alpha to cease all business, *Attach. A*;
>
> (5) on July 8, 2005, the Ohio Secretary of State issued a Certificate of Dissolution of Alpha Telecommunications, Inc., *Attach. C*.

*Id*. at 1-2.

Alpha's attorney and former shareholder, Nathaniel Hawthorne, responded to the show cause order on June 14, 2006. *First Case, ECF No. 7*. He acknowledged that Alpha was a dissolved corporation, but argued that he could bring this action against Progressive because a corporation continues to exist after dissolution for the purpose of winding up its affairs, and it may sue and be sued on existing contracts. He claimed that he derived the authority to sue Progressive from language in the Settlement Agreement entered in the *Karas* case, which purported to resolve the claims and counterclaims asserted by the parties in that case and dissolve the corporation. *Id., Ex. 1*. The Agreement delineated which party was entitled to collect Alpha's receivable accounts:

> The Defendants [defined in the Agreement as Hawthorne, Rosemary Enos, Hugh Manning, Frank Novak, and Epic Communications, Inc.] shall collect the accounts receivable from ANS, Blackwell, Intellimark and STING. The

> Defendants shall be permitted to keep one hundred percent of said receivables, subject to the provisions of [Paragraph 2(c)].

*Id*. ¶ 2(a). Moreover,

> All accounts receivable from Alpha . . . customers not specifically enumerated in paragraph 2(a) shall be collected by Plaintiff [Karas], who shall be permitted to keep 100% of said receivables, subject to the provisions of Paragraph 2(c)."

*Id*. ¶ 2(b). Pursuant to Paragraph 2(c), all monies collected were to be placed in the account of an escrow agent for disbursement. *Id*. The Agreement contained a dispute-resolution clause providing that:

> [a]ny dispute arising out of this Agreement shall be submitted to mediation before Niki Z. Schwartz, Esq. If mediation is unsuccessful, then the dispute shall be submitted to binding arbitration before an arbitrator, to be agreed upon by the parties, who shall apply The Rules for Commercial Arbitration of the American Arbitration Association. Said mediation and/or arbitration shall occur in Cleveland, Ohio.

*Id*. ¶ 11.

In the meantime, the Court learned that Alpha had filed numerous cases against various defendants in both state and federal courts. Among those cases was a removed case brought by Alpha against the Fort Wayne Community Schools ("Fort Wayne") and assigned to my colleague, District Judge Patricia A. Gaughan. *Alpha Telecommunications, Inc., et al. v. Fort Wayne Community Schools*, No. 1:05 CV 2660, 2006 WL 1262561 (N. D. Ohio May 8, 2006) (Gaughan, D.J.). There, Fort Wayne filed a motion for summary judgment arguing, *inter alia*, that Mr. Hawthorne lacked standing to sue Fort Wayne on behalf of Alpha because Fort Wayne was not one of the four enumerated Alpha customers in the Settlement Agreement whose debt Mr. Hawthorne had authority to collect. *Id., ECF No. 8* at 5-7. Judge Gaughan granted summary judgment, concluding that once Alpha was dissolved, the shareholders, including Mr.

Hawthorne, lost the ability to control Alpha's activities. *Id*. at 6. Furthermore, even if the Agreement could confer standing on Alpha's shareholders, which she did <u>not</u> concede, the language of the Agreement did not afford Mr. Hawthorne the right to collect any amounts owed to Alpha by Fort Wayne.[1] *Id*.

The undersigned held a teleconference with lead counsel of record on June 14, and again on June 15, expressing concern over whether Alpha had standing to bring its contract claim against Progressive for the same reason articulated in Judge Gaughan's opinion. The Court noted that the Settlement Agreement did not mention Progressive at all. Mr. Hawthorne responded that "ANS," which was enumerated in the Settlement Agreement, was the same entity as Progressive; therefore, he had standing to bring this suit. Progressive's counsel informed the Court that Progressive had settled an earlier case brought against it by Mr. Hawthorne on behalf of Alpha in state court, and that, after Progressive had paid the money to Mr. Hawthorne, Paul Karas had contacted Progressive's attorney to inquire about the settlement payment. The Court directed Progressive to determine the underlying facts regarding the alleged contract to see if the case could be settled, and scheduled another teleconference for June 29, 2006.

During the June 29 conference, counsel for Progressive reiterated his concern about engaging in settlement discussions with Mr. Hawthorne given what appears to be a still unsettled relationship between Hawthorne and Karas. Hawthorne agreed to submit a document from Karas stating that Hawthorne had the authority to bring this case against Progressive on behalf of Alpha, and that he had the authority to settle it. Hawthorne also agreed to submit a

---

[1]Fort Wayne also argued that the case should be dismissed for failure to join an indispensable party, i.e., Paul Karas. Judge Gaughan found it unnecessary to address that issue because of her ruling that Mr. Hawthorne lacked standing to sue Fort Wayne.

demand to Progressive, to which Progressive would submit a counteroffer – all of this prior to a followup teleconference scheduled for July 18, 2006. The Court memorialized this agreement in an order issued that day. *First Case, ECF No. 12*.

On July 7, 2006, Mr. Hawthorne submitted a demand letter to Progressive which stated, regarding the Karas authorization, that Hawthorne did not need such authorization to collect Progressive's debt to Alpha, and that the Settlement Agreement provided sufficient authority for him to act on behalf of Alpha with respect to the debt. He acknowledged that any disagreements between him and Karas regarding the Settlement Agreement must be submitted to arbitration; however, since the Agreement so clearly authorized him to sue Progressive, and there is no apparent disagreement between him and Karas on this issue, arbitration was not in order. Attached to the demand letter were documents purporting to show that ANS is Progressive. Thereafter, Mr. Hawthorne and counsel for Progressive filed numerous documents regarding three entities: Progressive, ANS and ANS Connect. *First Case, ECF Nos. 13-15*.

During the July 18, 2006 teleconference, the Court advised counsel that it was still unclear whether ANS was Progressive, and unless and until Mr. Hawthorne could provide some definitive proof that Progressive was ANS – or some documentation from Karas stating that Hawthorne had authority to litigate this case, the Court was inclined to dismiss the case without prejudice. Nonetheless, the Court left the door open for Mr. Hawthorne to make his proof or obtain Karas' authorization. Mr. Hawthorne then invited the Court to issue a dismissal of the case without prejudice, and the Court agreed to do so. Less than 24 hours later (July 19, 2006), before the Court issued a decision reflecting Mr. Hawthorne's requested dismissal, he filed a notice of appeal. *First Case, ECF No. 16*. Notwithstanding, on July 21, 2006, the Court

accepted Mr. Hawthorne's offer to dismiss the First Case without prejudice, and told Mr. Hawthorne that he could refile the case when and if he submits proof of his standing to sue Progressive on behalf of Alpha. *Id*. On September 14, 2006, the parties voluntarily dismissed the appeal. *Id., ECF No. 20*.

Meanwhile, on September 7, Mr. Hawthorne filed the exact same case over the same "Year 7" contract dispute in state court. *See Case No. 1:06 CV 2492* ("**Second Case**"), *ECF No. 1, Ex. 1*. On September 17, 2006, Progressive removed the case based on diversity jurisdiction; the case was assigned to me as related to the First Case; and, shortly thereafter, Mr. Hawthorne filed a voluntary notice of dismissal under Fed. R. Civ. P. 41(a)(1). *Id., ECF No. 3*. Because a Rule 41(a)(1) notice of dismissal operates as an adjudication on the merits when filed by a plaintiff who has once dismissed in any court an action based on or including the same claim, it is my opinion that this dismissal was in fact a dismissal on the merits.

Nonetheless, on November 29, 2006, Mr. Hawthorne filed another case over the same "Year 7" contract dispute in state court. *See Case No. 1:06 CV 2975* ("**Third Case**"), *ECF No. 1, Ex. 2*. This time, however, he also sued the Educational Funding Group ("EFG"). Per the Ohio Secretary of State website, EFG is an Ohio corporation of which Paul Karas is a director. In addition to the contract claim against Progressive, Alpha alleged a claim against EFG for tortious interference with the "Year 7" contract between Alpha and Progressive, and a claim against Progressive and EFG for conspiring to interfere with the same contract.[2] On December

---

[2] Among other things, Alpha alleges that, "[u]pon information and belief, one or more representatives of EFG made *ex parte* contact with Judge Polster and falsely informed Judge Polster that Hawthorne had no authority to file suit on Alpha's behalf against Progressive, that such authority could be obtained only from non-party Paul Karas." *Second Case, ECF No. 1* ¶ 18(c). The Court notes for the record that it has never had any contact with anyone from EFG.

12, 2006, Progressive removed the case based on diversity jurisdiction, and the case was assigned to me as related to the First Case.

On December 14, 2006, the Court issued a Show Cause Order stating, in pertinent part:

> The Court believes that this case should be dismissed with prejudice for several reasons. First, this case has already been dismissed with prejudice. Second, (and as Judge Gaughan has already held), once Alpha was dissolved, the shareholders, including Mr. Hawthorne, lost the ability to control Alpha's activities and, thus, lost standing to bring this case. Third, Mr. Hawthorne has yet to show that he has standing, either by submitting this issue to mediation or arbitration pursuant to the Settlement Agreement or getting a letter from Mr. Karas. Accordingly,
> the Court hereby **ORDERS** Mr. Hawthorne to file a concise brief no later than December 22, 2006 addressing these three issues and explaining why this third case should not be dismissed.

*ECF No. 4*, at 7 (emphasis in original).

On December 21, 2006, Mr. Hawthorne filed a Motion to Remand. *ECF No. 5*. Mr. Hawthorne asks the Court to remand the case because, on the face of the complaint, complete diversity of the parties is lacking. *Id*.

The Court has reviewed the record again and notes that the notice of removal filed by Progressive simply states that the Court has jurisdiction over the complaint based on diversity. It fails to state that EFG was fraudulently joined for the purpose of destroying diversity and, frankly, EFG's presence in the case may be the only way to resolve the standing issue. It is my opinion that this might have been a worthwhile tactic had EFG been added to the Second Case; however, it is also my opinion that the dispute over the "Year 7" contract can no longer be litigated based on the dismissal of the Second Case – a dismissal that I believe is on

the merits. My opinion in this regard, however, is advisory only, since it is my conclusion that I have no subject matter jurisdiction over this case due to lack of complete diversity.

Accordingly, the Motion to Remand (**ECF No. 5**) is hereby **GRANTED** and the Clerk of Court is directed to remand the case to the state court from whence it was removed.

**IT IS SO ORDERED.**

                                                _/s/Dan Aaron Polster     December 22, 2006_
                                                **Dan Aaron Polster**
                                                **United States District Judge**